**Opinion filed August 13, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00332-CR

_____

## MARY ANN CASTILLO, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 22840A**

### M E M O R A N D U M   O P I N I O N

The jury convicted Mary Ann Castillo of aggravated robbery, found that she used a deadly weapon, and assessed her punishment at confinement for five years. We affirm.

*Background Facts*

Appellant and Adolfo Aguillon Jr. knew each other from work. On the night of September 17, 2006, appellant, Aguillon, and Amely Sanchez were all at the same bar. Appellant invited Aguillon back to her house after the bar closed. Aguillon had been to appellant's house on prior occasions. After stopping at a Skinny's convenience store to buy some beer, Aguillon went to

appellant's house. When he arrived, there were several people at the house, including Sanchez and appellant. Aguillon asked appellant if he could spend the night because he was too impaired to drive home. Appellant agreed. Later, when everyone else had left except for Aguillon, Sanchez, and appellant, Aguillon was sitting on the couch. Appellant sat on him and began hitting him with a hatchet on his chest and head. Appellant was screaming, "Give me my f-----g money. Give me my f-----g money." Sanchez held Aguillon's hands behind his head while appellant hit him. Aguillon passed out, and when he woke up, he was in the back of his pickup rolled up in a carpet from appellant's house. Aguillon was able to jump out of the pickup and get help.

Aguillon was taken to the emergency room. He had a five-inch long laceration on his head that required thirteen staples to close. He also had bruises on his head, face, chest, abdomen, back, shoulder, elbow, and forearm. Appellant stole Aguillon's rings, necklace, and pendant that he was wearing. Appellant also took over $200 from Aguillon's wallet and his pickup. Aguillon's pickup and other contents of his wallet were later recovered.

*Issue on Appeal*

Appellant asserts that the evidence is legally and factually insufficient to find her guilty of aggravated robbery because she lacked the requisite intent to commit theft at the time of the assault.

*Standard of Review*

In order to determine if the evidence is legally sufficient, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). The factfinder may choose to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

In order to determine if the evidence is factually sufficient, we review all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part *Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004)); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, we determine whether the evidence

supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11.

*Discussion*

A person commits aggravated robbery if, during the course of committing theft of property and with the intent to obtain or maintain control of the property, she intentionally, knowingly, or recklessly causes serious bodily injury to another or uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. § 29.03(a)(1), (2) (Vernon 2003). "[C]ourse of committing" means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt of commission of theft. TEX. PENAL CODE ANN. § 29.01(1) (Vernon 2003). Intent may be inferred from the acts, words, and conduct of the accused. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). The intent to rob must be formed at the time of the assault. *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). Proof of theft committed as an afterthought and unrelated to the assault is not sufficient evidence of robbery. *Alvarado*, 912 S.W.2d at 207. However, if there is evidence that the defendant formed the intent to obtain or maintain control of the victim's property either before or during the commission of the assault, then the State has proved that the theft occurred in the course of the assault. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). Theft occurring immediately after an assault will support an inference that the assault was intended to facilitate the theft. *Cooper v. State*, 67 S.W.3d 221, 224 (Tex. Crim. App. 2002). This inference is not negated when there is evidence of an alternative motive that the jury could rationally disregard. *Id.*

Appellant argues that she had not formed the requisite intent to deprive Aguillon of his property prior to the time of the assault and that, therefore, her conduct can only constitute assault or aggravated assault. Appellant argues that the testimony of Sanchez and Aguillon showed that appellant attacked Aguillon out of revenge and to get her money back that she believed he had taken from her.

Aguillon testified that appellant was screaming at him (about giving her the money) while hitting him with the hatchet but that he did not know what she was talking about. On cross-examination, Aguillon denied having taken any money from appellant and again stated that he did not know anything about someone stealing money from appellant.

3

Sanchez testified that appellant told her that Aguillon had stolen money out of her purse about three weeks prior to this incident. Sanchez testified that, while appellant was hitting Aguillon with the hatchet, they were arguing about the money that he had stolen from her. Sanchez testified that Aguillon said he was sorry and that he would never do it again. She stated that, in her mind, that meant he had stolen the money from appellant. However, Sanchez further testified that she had no proof that Aguillon had taken the money and that she did not mention Aguillon's apology in two statements given to the police. Sanchez also denied holding Aguillon down for any extended period of time, even though she admitted his injuries were consistent with his arms being held.

In this case, the evidence is legally and factually sufficient to show that the assault on Aguillon happened during the commission of the theft. Appellant took Aguillon's jewelry, cash, and pickup after he lost consciousness. The theft occurred right after the assault and supports the inference that the assault was used to facilitate the taking of the property. Appellant tried to elicit evidence that the assault was only for revenge against Aguillon for allegedly stealing from her. However, only the testimony of Sanchez supports this theory, which the jury was free to disbelieve. The evidence shows that appellant had the intent to steal back whatever she thought Aguillon had stolen from her. The jury could rationally disregard defendant's theory that her motive for the assault was revenge. *See Cooper*, 67 S.W.3d at 224. We overrule appellant's issue on appeal.

*Conclusion*

The judgment of the trial court is affirmed.

RICK STRANGE

JUSTICE

August 13, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

4