

Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★



★ ★ ★

# MEMORANDUM OPINION

No. 04-08-00831-CR

Joaquin **ALVAREZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-1705
Honorable Mary D. Román, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed: October 7, 2009

AFFIRMED

A jury convicted Joaquin Alvarez of three counts of sexual assault and one count of robbery. The jury found the enhancement paragraph in the indictment true and assessed Alvarez's punishment at life imprisonment for each of his offenses. On appeal, Alvarez claims: (1) the evidence is factually insufficient to support any of his convictions; (2) the trial court improperly limited his cross-examination of a prosecution witness during the punishment phase of the trial; and (3) his right

to a fair trial was violated when the trial judge improperly commented on the weight of the evidence. We affirm the trial court's judgment.

## BACKGROUND

The complainant, E.A., met Alvarez at a bar one night in May 2006.[1] E.A. left the bar with her sister, M.A., and Alvarez, believing the group would go to another bar to continue drinking. M.A. decided that she wanted to go home for the night, and she had E.A. and Alvarez drop her off on their way to the bar. After E.A. and Alvarez dropped M.A. off, they procured a bottle of liquor to drink on their way to the next bar.

E.A. did not know how to get to the bar and had to rely on Alvarez's driving directions to get them to their destination. E.A. followed Alvarez's directions, which eventually led her and Alvarez to an old neighborhood. When Alvarez instructed E.A. to follow the road and drive into a nearby field, E.A. began to panic because she thought Alvarez was looking for a secluded location to "kill [her]." E.A. decided to run from Alvarez and jumped out of her moving vehicle. E.A. tried to run back toward the street, but Alvarez caught her before she could escape. When Alvarez caught E.A., he pulled off her pants and had sexual intercourse with her against her will.

E.A. pleaded with Alvarez to stop and told him they could "go to a hotel." Alvarez agreed with E.A.'s request to stop and "got up off of [her]." As they began walking back to E.A.'s vehicle, E.A. ran into some tall grass and hid from Alvarez. E.A. heard Alvarez open her car door and begin to make a lot of noise. E.A. believed Alvarez was gaining control of her property at this time, specifically her purse, cell phone, and car stereo.

---

[1] To protect the privacy of the complainant in this case, we identify the complainant and her sister by their initials only.

When she thought Alvarez had stopped looking for her, E.A. came out from hiding and ran for the street.  Alvarez, however, had not given up looking for E.A. and was waiting for her when she came out of the grass.  When Alvarez caught E.A., he made E.A. perform oral sex on him and again had sexual intercourse with her.  He also performed oral sex on E.A. at this time.  Upon completing his sexual acts, Alvarez apologized to E.A. and asked her to refrain from calling the police.  E.A. promised not to call the police, and Alvarez released her.  E.A. walked to a nearby gas station, where a security guard contacted the police.

Officers found E.A.'s vehicle, her underwear, and an open bottle of liquor where E.A. was assaulted.  However, authorities could not locate E.A.'s purse, cell phone, or car stereo.  Officers took E.A. to the hospital, where she underwent a sexual assault examination.  Examiners collected buccal swabs from E.A. and took photographs of her injuries.  Officers were later able to verify that Alvarez was the donor of the DNA collected from E.A.'s person, and Alvarez was charged with three counts of sexual assault and one count of robbery.  A jury found Alvarez guilty as charged in the indictment and found the enhancement paragraph in the indictment true.  The jury assessed life sentences for each of the counts in the indictment, and the trial court sentenced Alvarez accordingly.[2] This appeal followed.

## FACTUAL SUFFICIENCY OF THE EVIDENCE

Alvarez claims the evidence is factually insufficient to support any of his convictions. When considering a factual sufficiency challenge, we look at the evidence in a neutral light giving almost complete deference to the jury's determinations of credibility. *Lancon v. State*, 253 S.W.3d 699, 705

---

[2] The trial court ordered Alavarez's four life sentences to run concurrently to each other, but consecutively to another life sentence previously imposed upon Alvarez in a companion case.

(Tex. Crim. App. 2008). We reverse only if the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust or if the evidence supporting the verdict is outweighed by the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

**A. Sexual Assault**

A person commits the offense of sexual assault if he intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without that person's consent. TEX. PENAL CODE ANN. § 22.011(a)(1)(A) (Vernon 2003). Sexual assault also occurs when a person intentionally or knowingly causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent. *Id.* at (a)(1)(B). A sexual assault is "without the consent of the other person if . . . the actor compels the other person to submit or participate by the use of physical force or violence." *Id.* at (b)(1).

Alvarez claims the evidence is factually insufficient to support his sexual assault convictions because the State's evidence fails to show he acted without E.A.'s consent. E.A., however, expressly testified she never consented to any sexual contact with Alvarez. E.A.'s behavior on the night of the assaults confirms this point and shows E.A. was afraid of Alvarez. E.A. testified she jumped out of her moving vehicle and tried to run from Alvarez as soon as she realized Alvarez was taking her to a desolate location. The record further shows E.A. attempted to run from Alvarez several other times that night.

Alvarez argues E.A.'s testimony is unreliable because she was highly intoxicated on the night in question.[3] Alvarez's argument, however, goes to E.A.'s credibility as a witness and is a matter

---

[3] E.A. described herself as "the drunkest person at the bar."

for the jury to determine. *See Guajardo v. State*, 176 S.W.3d 402, 404-05 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (explaining a complainant's intoxication goes to his or her credibility as a witness); *see also Stogiera v. State*, 191 S.W.3d 194, 196 (Tex. App.—San Antonio 2005, no pet.) (recognizing the jury evaluates the credibility and demeanor of witnesses and determines the weight afforded contradicting testimony). The jury apparently believed E.A.'s testimony and we must defer to this credibility determination by the factfinder. When all of the evidence is viewed in a neutral light, we cannot say the jury's findings are clearly wrong or manifestly unjust or that they are against the great weight and preponderance of the evidence. Alvarez's first issue is overruled.

## A. Robbery

A person commits the offense of robbery if, in the course of committing a theft, and with intent to obtain or maintain control of property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PEN. CODE ANN. § 29.02(a) (Vernon 2003). "In the course of committing a theft" refers to "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1) (Vernon 2003).

Intent is a fact issue for the jury. *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984). Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the defendant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). A defendant can form the intent to cause bodily injury at any time during the course of committing theft in the context of a robbery. *Matlock v. State*, 20 S.W.3d 57, 63 (Tex. App.—Texarkana 2000, pet. ref'd).

Alvarez asserts the evidence is factually insufficient to support his robbery conviction because his assaultive conduct is unrelated to the theft of E.A.'s property. We are unpersuaded by Alvarez's contention. We initially note that the intent to obtain or maintain control of property as delineated in section 29.02, addresses the robber's state of mind regarding the property and not his state of mind in the assaultive component of the aggravated robbery. *See White v. State*, 671 S.W.2d 40, 42 (Tex. Crim. App. 1984). We further note the general rule in robbery cases is that the connection between the assault and the theft may be inferred when both offenses occur in close temporal proximity. *See Cooper v. State*, 67 S.W.3d 221, 224 (Tex. Crim. App. 2002). This inference will not be negated by evidence of an alternate motive that a rational jury could rationally disregard. *Id.* Here, the record shows that during a pause in the ongoing and repeated sexual assaults of E.A., Alvarez secured control of E.A.'s purse, cell phone, and car stereo. After obtaining control of E.A.'s property, Alvarez waited for E.A. to come out of hiding and sexually assaulted her several more times before releasing her and fleeing with her property. We believe these circumstances are sufficient to support an inference that Alvarez assaulted E.A. in the course of committing theft. Accordingly, when all of the evidence is viewed in a neutral light, we cannot say the jury's findings are clearly wrong or manifestly unjust or that they are against the great weight and preponderance of the evidence. Alvarez's second issue is overruled.

### CROSS-EXAMINATION OF STATE'S WITNESS

Alvarez complains the trial court improperly limited his cross-examination of a prosecution witness during the punishment phase of the trial. When an appellant contends his cross-examination of a witness was unduly limited by the trial court, nothing is preserved for review unless the record shows by bill of exception or otherwise what questions he wanted to propound and the answers he

expected. *Easterling v. State*, 710 S.W.2d 569, 578 (Tex. Crim. App. 1986). Alvarez did not perfect a bill of exception or proffer proof to show what questions he wanted to propound and the answers he expected from the prosecution witness. Consequently, Alvarez's complaint concerning the limitation of his cross-examination is not preserved for our review. Alvarez's third issue is overruled.

IMPROPER COMMENT ON THE WEIGHT OF THE EVIDENCE

Lastly, Alvarez asserts his right to a fair trial was violated when the trial judge improperly commented on the weight of the evidence. The record shows that at the conclusion of the punishment phase of the trial, Alvarez introduced his competency evaluation from a companion case in an effort to persuade the jury to grant him leniency.[4] The trial court admitted the evaluation without any objections, and both sides rested. The following then occurred:

| | |
|---|---|
| Defense Counsel: | And may I approach the bench regarding the last witness's report? |
| The Court: | You may. |
| Defense Counsel: | Do you have it your Honor? |
| The Court: | I do not. |

***

| | |
|---|---|
| The Court: | I am going to go ahead and have this copied because this is going to take a long time to review and I can just hand out copies to all of the jurors. Do you have any problems with that? |
| The State: | No. That should be fine. |

---

[4] Alvarez believed the jury might be more sympathetic to him if it read the evaluation and learned he had three young children.

\*\*\*

Unidentified Juror:    If I may, being that we just came back after a short lunch and it's been and hour and a half, if we just take five minutes average each of reading this it's going to be another hour before completion. Would it be allowed for a short recess break for the Jury to go to the restroom and –

The Court:    That would be okay. My only concern is that all of you have to look at this. Because of the way it was introduced into evidence.

Unidentified Juror:    Yes, ma'am.

The Court:    I'm trying to get copies for the rest of you. Leave that copy here, go on a short break and let me see if I can get those copies for you. And I would suggest to you that you jump to the conclusion and skim through there because it's very straightforward and I know you have to read it; however, you will also get it when you go back to deliberate. So you can take another look at it. What is really important is that you take a look at the conclusion. Go ahead and take a break. Leave the copy here and we'll see if we can't get you copies as soon as you get back. Thank you.

\*\*\*

The Court:    Ladies and gentlemen, I would like to point out to you that on page 4, towards the bottom of the page, is a paragraph and it starts out with: Conclusion. And if you will read that. And when you are ready, put your reading down and we will proceed. And you will get the entire document shortly.[5]

The court then read the charge on punishment to the jury and allowed the prosecution and defense to present closing arguments.

---

[5] The section entitled "Conclusion" provided: "[Alvarez] appears to have the capacity to work with his attorney in the preparation of his defense. He understands the charge that he is facing as well as the legal proceedings that he is likely to go through. Therefore, I believe that he is currently competent to stand trial."

Article 38.05 of the Texas Code of Criminal Procedure prohibits trial courts from commenting on the weight of the evidence. TEX. CODE CRIM. PROC. ANN. art. 38.05 (Vernon 1979). A trial court's improper comment on the weight of the evidence results in reversible error only when it is reasonably calculated to benefit the State or prejudice the defendant's rights. *Marks v. State*, 617 S.W.2d 250, 252 (Tex. Crim. App. 1981). However, a timely proper objection is necessary to preserve error concerning a trial court's comment on the weight of the evidence. *Peavey v. State*, 248 S.W.3d 455, 470 (Tex. App.—Austin 2008, pet. ref'd).

Alvarez did not timely object to the trial court's statement. He therefore failed to preserve his complaint for our review. *See id.* However, even if this complaint were preserved, we cannot say the trial court's statement, when viewed in context, is an improper comment on the weight of the evidence. It appears the trial court was merely trying to expedite the process by which the jurors reviewed Alvarez's exhibit so that it could proceed to closing arguments on punishment. The trial court's statement was thus not calculated to convey the court's opinion of the case to the jury. *See generally Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001) (stating "[a] trial judge has broad discretion in maintaining control and expediting the trial."). Alvarez's fourth issue is overruled.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH